## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

VALERO ENERGY CORPORATION,
VALERO REFINING – NEW ORLEANS, LLC,
THE PREMCOR REFINING GROUP, INC.,
VALERO REFINING – TEXAS, L.P.                Civil Action No.  20cv1237
DIAMOND SHAMROCK REFINING, L.P.
VALERO REFINING COMPANY –
  TENNESSEE, L.L.C.,
VALERO MARKETING AND SUPPLY COMPANY,
HAMMOND MAINLINE PIPELINE COMPANY
  LLC, AND
ULTRAMAR, INC.,

      Defendants.

---

## COMPLAINT

---

The United States of America, through its undersigned attorneys, by authority of the

Attorney General, and at the request of the Administrator of the United States Environmental

Protection Agency ("EPA"), brings this complaint alleging as follows:

### NATURE OF ACTION

1.  This is an action for civil penalties and injunctive relief  against Valero Energy

Corporation (EPA Company ID Registration Number 4006), Valero Refining – New Orleans,

LLC, The Premcor Refining Group, Inc., Valero Refining – Texas, L.P., Diamond Shamrock Refining, L.P., Valero Refining Company – Tennessee, L.L.C., Valero Marketing and Supply Company, Hammond Mainline Pipeline Company LLC, and Ultramar, Inc. (collectively, "Valero")  pursuant to Sections 205(b) and 211(d) of the Clean Air Act, as amended ("CAA" or "Act"), 42 U.S.C. §§  7524(b) and 7545(d), for violations of regulations relating to the production and distribution of gasoline and diesel fuel prescribed under Section 211(c), (h), and (k) of the Act, 42 U.S.C. § 7545(c), (h), and (k), and published at 40 C.F.R. Part 80, Subparts A, B, D, E, H, I and L (the "Fuels Regulations").

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject matter of this action and the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 205(b) and 211(d) of the Act, 42 U.S.C. §§ 7524(b) and 7545(d).

3.  Pursuant to Sections 205(b) and 211(d)(1) of the Act, 42 U.S.C. §§ 7524(b) and 7545(d)(1), the United States district courts have jurisdiction to assess civil penalties for violations of the Act's Fuels Regulations.

4.  Pursuant to Section 211(d)(2) of the Act, 42 U.S.C. § 7545(d)(2), the United States district courts are authorized to restrain violations of the Act's Fuels Regulations and to award other appropriate relief.

5.  Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), 1395(a) and Section 205(b) of the Act, 42 U.S.C. § 7524(b), because Valero's principal place of business is located in this judicial district.

## AUTHORITY

6.  The United States Department of Justice has authority to bring this action on behalf of the Administrator of the EPA pursuant to 28 U.S.C. §§ 516 and 519, and Section 305(a) of the Act, 42 U.S.C § 7605(a).

## DEFENDANTS

7.  Valero Energy Corporation, a holding company that owns one hundred percent of the shares of the other Valero Defendants named in this Complaint, is the Valero Defendant registered with the EPA under the Fuels Regulations.  Valero Energy Corporation is incorporated in the State of Delaware and its principal place of business is located at  One Valero Way, San Antonio, Texas.

8.  Valero Refining – New Orleans LLC owns and operates a refinery located in Norco, Louisiana ("St. Charles Refinery."

9.  The Premcor Refining Group, Inc. owns and operates refineries located in Port Arthur, Texas ("Port Arthur Refinery") and West Memphis, Arkansas ("West Memphis Terminal").

10.  Valero Refining – Texas, L.P. owns and operates refineries located in Texas City, Texas ("Texas City Refinery"), Houston, Texas ("Houston Refinery"), and Corpus Christi, Texas ("Corpus Christi East Refinery").

11.  Diamond Shamrock Refining, L.P. owns and operates a refinery located in Sunray, Texas ("McKee Refinery").

12.  Valero Refining Company – Tennessee, L.L.C. owns and operates a refinery located

Complaint                                             3                           U.S. v. Valero Energy Corp.
                                                                                  Civil Action No. 20cv1237

in Memphis, Tennessee ("Memphis Refinery").

13.  Valero Marketing and Supply Company operated, controlled, or supervised the gasoline production at refineries located in Perth Amboy, New Jersey ("KMI Perth Amboy NJ Terminal") and Houston, Texas ("KMI Houston Terminal") at issue in this matter.

14.  Hammond Mainline Pipeline Company LLC owns and operates a refinery located in Hammond, Indiana ("Hammond Terminal").

15.  Ultramar, Inc. imported the gasoline to the import facility located in Queensbury, New York ("Ultramar Energy").

## THE CLEAN AIR ACT AND APPLICABLE REGULATIONS

16.  Section 211 of the Act, 42 U.S.C. § 7545, contains numerous provisions to ensure that only compliant fuel is produced and distributed in the United States.

17.  Under Section 211(c) of the Act, 42 U.S.C. § 7545(c), the EPA may control the composition of fuel if when combusted the emission products of the fuel cause or contribute to air pollution that may reasonably be anticipated to endanger public health or welfare or if the emission products of the fuel will significantly impair emissions control systems that are in general use or that will be in general use were the fuel control to be adopted.

18.  The 1990 CAA Amendments added CAA Sections 211(h) and 211(k), 42 U.S.C. § 7545(h) and (k).

19.  CAA Section 211(h), 42 U.S.C. § 7545(h), requires the EPA to promulgate regulations prohibiting the sale of gasoline that exceeds certain volatility standards during the summer ozone season.

20.  CAA Section 211(k), 42 U.S.C. § 7545(k), prescribes requirements for the sale of reformulated gasoline and reformulated gasoline for oxygenate blending (collectively "RFG") to reduce toxics and ozone-forming volatile organic compounds ("VOCs") in the nine largest metropolitan areas with the most severe summertime ozone levels and in other ozone nonattainment areas that opt into the program. Section 211(k) also prohibits the gasoline sold in the rest of the country, known as conventional gasoline and conventional gasoline for oxygenate blending (collectively "CG"), from becoming more polluting than it was in 1990. This requirement ensures that refiners do not "dump" fuel components that are restricted in RFG, and that cause environmentally harmful emissions, into conventional gasoline.

21.  The EPA promulgated the Fuels Regulations pursuant to its statutory authority under Sections 211(c), (h), and (k) of the Act, 42 U.S.C. § 7545(c), (h), and (k).

22.  Any person who violates the regulations prescribed under Sections 211(c), (h), and (k) of the Act, shall be liable for a civil penalty of up to $37,500 per day for each day of violation occuring between January 12, 2009 and November 2, 2015, up to $48,192 per day for each violation occurring after November 2, 2015, plus the amount of any economic benefit or savings resulting from the violation, pursuant to Section 211(d)(1) of the Act, 42 U.S.C. § 7545(d)(1), and 40 C.F.R. § 19.4 (as adjusted over time as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996, and most recently, by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701)).

23.  Section 211(d)(2) of the Act, 42 U.S.C. § 7545(d)(2), authorizes this Court with jurisdiction to restrain violations of the regulations prescribed under Sections 211(c), (h), and (k) of the Act.

### A.  **Gasoline Volatility Standards**

24.  Both the CG Reid Vapor Pressure ("RVP") standards and the RFG VOC emissions performance reduction standards regulate gasoline volatility. See 40 C.F.R. §§ 80.27(a)(2) and 80.41(e)-(f).

25.  The CG RVP standards apply to refiners and importers during the "regulatory control period" of May 1 through September 15, and different RVP standards apply in different locations. 40 C.F.R. § 80.27(a)(2). The RVP standards are generally either 7.8 or 9.0 pounds per square inch (psi). Id.

26.  40 C.F.R. § 80.27(a)(2) provides: "[D]uring the 1992 and later regulatory control periods, no refiner, importer, distributor, reseller, or carrier shall sell, offer for sale, dispense, supply, offer for supply, or introduce into commerce gasoline whose Reid vapor pressure exceeds the applicable standard."

27.  Like the CG RVP standards, the RFG VOC emissions performance reduction standards apply from May 1 through September 15 for refiners. 40 C.F.R. § 80.78(a)(1)(v).

28.  40 C.F.R. § 80.65(d)(2) requires refiners and importers to designate all RFG as either VOC-controlled or not VOC-controlled.

29.  In the case of RFG that is designated as VOC-controlled, it must be designated for use in either VOC-Control Region 1 or VOC-Control Region 2 (as defined in § 80.71), or

designated as "adjusted VOC gasoline" (as defined in § 80.40(c)(1)). <u>Id.</u>

30.  Additionally, refiners and importers must designate whether they are complying with the VOC emissions performance reduction standards on a per-gallon basis or on an annual average basis for each refinery or import facility. 40 C.F.R. § 80.65(c).

31.  For gasoline designated as VOC-Control Region 1, the per-gallon VOC emissions performance reduction standard is greater than or equal to 27.5 percent, and the averaged VOC emissions performance reduction standard is greater than or equal to 29.0 percent. 40 C.F.R. § 80.41(e)-(f).

32.  For gasoline designated as VOC-Control Region 2, the per-gallon VOC emissions performance reduction standard is greater than or equal to 25.9 percent, and the averaged VOC emissions performance reduction standard is greater than or equal to 27.4 percent. <u>Id.</u>

33.  For gasoline designated as "adjusted VOC gasoline," the per-gallon VOC emissions performance reduction standard is greater than or equal to 23.9 percent, and the averaged VOC emissions performance reduction standard is greater than or equal to 25.4 percent. <u>Id.</u>

34.  If, however, a refiner uses previously certified RFG ("PCG"), and elects to comply on a per-gallon basis, then the standard is the more stringent of either the per-gallon standard or the most stringent value for VOC emissions performance reduction for any PCG used to produce that batch. 40 C.F.R. § 80.65(i)(3)(i).

35.  40 C.F.R. § 80.78(a)(1) provides:

No person may manufacture and sell or distribute, offer for sale or distribution, dispense, supply, offer for supply, store, transport, or cause the transportation of any gasoline represented as reformulated and intended for sale or use in any covered area (v) [d]uring the period May 1 through September 15 for all persons

except retailers and wholesale purchaser-consumers . . . (A) [u]nless each gallon
for such gasoline is VOC-controlled for the proper VOC Control Region . . . [and]
(C) [u]nless each gallon of such gasoline . . . has a VOC emissions reduction
percentage which is greater than or equal to the applicable minimum [standard].

40 C.F.R. § 80.78(a)(1).

## B.  Gasoline Sulfur Standards

36.  At all relevant times, the gasoline sulfur regulations allowed refiners and importers to

produce and import gasoline (both CG and RFG) within a range of sulfur levels, so long as each

refinery's or importer's annual average sulfur level does not exceed 30.00 parts per million

("ppm") after application of valid credits. See 40 C.F.R. §§ 80.195, 80.310, and 80.315. In

addition, no individual batch of gasoline produced after January 1, 2006, can exceed a per-gallon

sulfur standard of 80 ppm. 40 C.F.R. § 80.195(a).

37.  40 C.F.R. § 80.385(b) provides that no person shall "[p]roduce, import, sell, offer for

sale, dispense supply, offer for supply, store or transport gasoline that does not comply with the

applicable sulfur cap standard under § 80.195."

38.  40 C.F.R. § 80.385(d) provides that no person shall "[c]ause gasoline to be in the

distribution system which does not comply with an applicable sulfur cap standard under §

80.195."

## C.  CG and Diesel Fuel Sampling and Testing Requirements

39.  40 C.F.R. § 80.101(i)(1)(i)(A) requires refiners to collect and analyze a

representative sample of each batch of CG they produce for the purpose of determining

compliance with the applicable emissions standards by using the test methods set forth in 40

C.F.R. § 80.46.

Complaint                                        8                    U.S. v. Valero Energy Corp.
                                                                      Civil Action No. 20cv1237

40. 40 C.F.R. § 80.46(c)(1) provides that through December 31, 2015, the RVP in CG must be determined using ASTM D5191.

41. 40 C.F.R. § 80.46(e) provides that through December 31, 2015, the benzene content of CG must be determined using ASTM D3606.

42. 40 C.F.R. § 80.8(a) provides that manual sampling of tanks and pipelines to collect CG samples for the purpose of determining compliance with the applicable emissions standards must be performed in accordance with ASTM D4057.

43. 40 C.F.R. § 80.8(c) provides that CG samples to be analyzed for RVP must be collected and handled in accordance with ASTM D5842.

44. 40 C.F.R § 80.581(a)-(b) requires refiners of motor vehicle, nonroad, locomotive, or marine diesel fuel (referred to as "ultra-low sulfur diesel fuel" or "ULSD") to collect and analyze a representative sample of each batch of ULSD they produce for the purpose of determining compliance with the ULSD sulfur standard by using the sampling and testing methods set forth in 40 C.F.R. § 80.580.

45. 40 C.F.R. § 80.580(a) provides that the sulfur content of diesel fuel is to be determined using the sampling methodology as provided in 40 C.F.R. § 80.330(b).

46. 40 C.F.R. § 80.330(b) provides that refiners shall conduct manual sampling of tanks and pipelines in accordance with ASTM D4057-12, but that samples collected under the applicable procedures in ASTM D5842-14 may be used for measuring sulfur content if there is no contamination present that could affect the sulfur test result.

47. 40 C.F.R. § 80.580(b) provides that the test method for ULSD may be determined

using any test method approved under 40 C.F.R. § 80.585.

48. 40 C.F.R. § 80.585(e) provides that a test for ULSD shall not be considered a test using an approved test method unless quality control methods are performed separately for each instrument used to make measurements, including upon the discovery of any quality control testing violation or check standard deviation, conducting an investigation into the cause of such violation or deviation.

49. 40 C.F.R § 80.586 provides that each test facility must maintain records related to any quality control testing and analysis under 40 C.F.R. § 80.585 for five years.

**D.    RFG and Gasoline Sulfur and Benzene Reporting Requirements**

50. 40 C.F.R. § 80.75 requires refiners to submit quarterly reports to the EPA with information regarding the RFG produced by them during the quarter. The reports are required to contain information about each batch of gasoline produced, including batch number, date of production, batch volume, grade of the gasoline produced, and the properties of the gasoline and the test method used to identify those properties. See 40 C.F.R. § 80.75(a)(2).

51. At all relevant times, 40 C.F.R. § 80.370 required refiners to submit annual reports to the EPA with information regarding the sulfur content in the gasoline (both CG and RFG) produced by them during the year. The reports are required to contain information about the gasoline produced, including the total volume, annual average sulfur level, annual average sulfur level after inclusion of any credits, and information about sulfur credits. See 40 C.F.R. § 80.370(a). The reports are also required to contain information about each batch of gasoline produced, including batch number, date of production, batch volume, and the sulfur content of

Complaint                                    10                     U.S. v. Valero Energy Corp.
                                                                    Civil Action No. 20cv1237

the gasoline and the test method used to identify the sulfur content. Id.

52.  40 C.F.R. § 80.1354(a) requires refiners to submit annual reports to the EPA with information regarding the benzene content in the gasoline (both CG and RFG) produced by them during the year. The reports are required to contain information about the gasoline produced, including the annual average benzene concentration and the test method used to measure the annual average benzene concentration, the maximum average benzene concentration and the test method used to measure the maximum average benzene concentration, any benzene deficit from the previous year, and information about benzene credits. See 40 C.F.R. § 80.1354(b)(2). The reports are also required to contain information about each batch of gasoline produced, including batch volume and benzene volume percent. See 40 C.F.R. § 80.1354(b)(1).

## GENERAL ALLEGATIONS

53.  At all relevant times, Valero was a corporation and therefore a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

54.  At all relevant times, the St. Charles Refinery, Port Arthur Refinery, Texas City Refinery, Houston Refinery, McKee Refinery, Memphis Refinery, Corpus Christi East Refinery, KMI Perth Amboy NJ Terminal, West Memphis Terminal, Hammond Terminal, and KMI Houston Terminal produced gasoline or diesel fuel. Accordingly, each of these facilities was a "refinery" within the meaning of 40 C.F.R. § 80.2(h), which defines "refinery" as "any facility . . . where gasoline or diesel fuel is produced, including any facility at which blendstocks are combined to produce gasoline or diesel fuel, or at which blendstock is added to gasoline or diesel fuel."

55.  At all relevant times, Valero owned, leased, controlled, or supervised gasoline or diesel fuel production at the St. Charles Refinery, Port Arthur Refinery, Texas City Refinery, Houston Refinery, McKee Refinery, Memphis Refinery, Corpus Christi East Refinery, KMI Perth Amboy NJ Terminal, West Memphis Terminal, Hammond Terminal, and KMI Houston Terminal. Accordingly, Valero was a "refiner" within the meaning of 40 C.F.R. § 80.2(i), which defines a "refiner" as "any person who owns, leases, operates, controls, or supervises a refinery."

56.  At all relevant times, Valero imported gasoline at Ultramar Energy. Accordingly, Valero was an "importer" within the meaning of 40 C.F.R. § 80.2(r), which defines "importer" as "a person who imports gasoline, gasoline blending stocks or components, or diesel fuel from a foreign country into the United States."

57.  In 2015, the EPA began a compliance audit of Valero. During that audit, the EPA reviewed records at Valero's headquarters in San Antonio, Texas from November 2, 2015, through November 6, 2015. During the audit, the EPA also visited the Memphis Refinery from October 26, 2015, through October 28, 2015 and the Houston Refinery and Texas City Refinery from November 2, 2015, through November 6, 2015, to observe their fuel sampling and testing procedures.

58.  On or around August 30, 2018, Valero self-disclosed a violation that occurred at the KMI Houston Terminal on or about August 1, 2018, involving a batch of RFG that did not meet the appropriate VOC emissions performance reduction standard.

59.  On or around December 9, 2019, Valero self-disclosed violations involving three truck shipments of CG from the Corpus Christi East Refinery in September 2017 with  RVPs that

exceeded 9.0 psi.

## FIRST CLAIM FOR RELIEF

(Port Arthur Refinery, St. Charles Refinery, and Ultramar Energy RVP Standard Violations)

60.  Paragraphs 1 through 59 are re-alleged and incorporated by reference.

61.  Valero violated 40 C.F.R. § 80.27(a)(2) at the Port Arthur Refinery, St. Charles Refinery, and Ultramar Energy by distributing CG with RVPs that exceeded 9.0 psi during the regulatory control period of May 1 to September 15 as detailed in the chart below.

| Facility | Batch Number | Batch Volume (gal) | Production Date | RVP (psi) |
|---|---|---|---|---|
| Port Arthur Refinery | 296 | 2,682,812 | 8/24/2014 | 9.22 |
| St. Charles Refinery | 44 | 7,356,132 | 5/5/2012 | 9.22 |
| St. Charles Refinery | 84 | 2,101,470 | 8/15/2012 | 9.18 |
| St. Charles Refinery | 85 | 10,116,624 | 8/20/2012 | 9.15 |
| St. Charles Refinery | 61 | 7,355,712 | 6/3/2013 | 9.08 |
| St. Charles Refinery | 110 | 4,661,202 | 8/28/2014 | 9.06 |
| Ultramar Energy | 79 | 287,574 | 5/6/2013 | 9.20 |
| Ultramar Energy | 80 | 147,756 | 5/19/2013 | 9.20 |

## SECOND CLAIM FOR RELIEF

(Texas City Refinery Per-Gallon VOC Standard Violations)

62.  Paragraphs 1 through 61 are re-alleged and incorporated by reference.

63.  In 2014, the Texas City Refinery elected to comply on a per-gallon basis for VOC reduction, which requires a VOC emissions performance reduction of greater than or equal to 27.5 percent for RFG designated for VOC-Control Region 1.

64.  On June 28, 2014, Valero produced batch number 113 at the Texas City Refinery

with a volume of 5,996,667 gallons and a VOC emissions performance reduction of 27.1 percent. Valero designated this batch for VOC-Control Region 1.

65.  On July 16, 2014, Valero produced batch number 123 at the Texas City Refinery with a volume of 5,601,167 gallons and a VOC emissions performance reduction of 26.3 percent. Valero designated this batch for VOC-Control Region 1.

66.  Valero violated 40 C.F.R. § 80.78(a)(1) at the Texas City Refinery in 2014 by producing RFG during the period of May 1 through September 15 that did not meet the applicable VOC emissions performance reduction standard of greater than 27.5 percent for RFG designated for VOC-Control Region 1.

### THIRD CLAIM FOR RELIEF

(Houston Refinery, KMI Perth Amboy NJ Terminal, and West Memphis Terminal VOC PCG Violations)

67.  Paragraphs 1 through 66 are re-alleged and incorporated by reference.

68.  At all relevant times, the Houston Refinery, KMI Perth Amboy NJ Terminal, and West Memphis Terminal elected to comply with the RFG VOC emissions performance reduction standards on a per-gallon basis.

69.  Valero violated 40 C.F.R. § 80.65(i)(3)(i) at the Houston Refinery in 2014, the KMI Perth Amboy NJ Terminal in 2012, 2013, and 2014, and the West Memphis Terminal in 2013 and 2014 by using approximately 29,940,867 gallons of PCG to produce approximately 66,014,690 gallons (20 batches) of RFG that did not meet the applicable VOC emission performance reduction standard of the most stringent VOC emissions performance reduction for any PCG used to produce the RFG.

## FOURTH CLAIM FOR RELIEF

(McKee Refinery Sulfur Standard Violations)

70.  Paragraphs 1 through 69 are re-alleged and incorporated by reference.

71.  On October 25, 2014, Valero produced batch number 996 at the McKee Refinery with a volume of 630,000 gallons and a sulfur level of 82 ppm.

72.  On November 29, 2014, Valero produced batch number 1135 at the McKee Refinery with a volume of 630,714 gallons and a sulfur level of 97 ppm.

73.  Valero violated 40 C.F.R. §§ 80.385(b) and (d) at the McKee Refinery in 2014 by producing and distributing gasoline that exceeded the gasoline per-gallon sulfur standard set forth at 40 C.F.R. § 80.195(a)(1) of 80 ppm.

## FIFTH CLAIM FOR RELIEF

(Hammond Terminal Reporting Violation)

74.  Paragraphs 1 through 73 are re-alleged and incorporated by reference.

75. Valero violated 40 C.F.R. § 80.1354(b)(2) at the Hammond Terminal by misreporting the average benzene concentration of the gasoline the Hammond Terminal produced in 2014 in its annual benzene report.

## SIXTH CLAIM FOR RELIEF

(KMI Perth Amboy NJ Terminal Reporting Violation)

76.  Paragraphs 1 through 75 are re-alleged and incorporated by reference.

77.  Valero violated 40 C.F.R. §§ 80.75(a)(2)(iii), 80.370(a)(7)(iii), and 80.1354(b)(1) at

Complaint                                    15                        U.S. v. Valero Energy Corp.
                                                                       Civil Action No. 20cv1237

the KMI Perth Amboy NJ Terminal by failing to account for the tank heel of approximately

661,270 gallons for batch number 4 (2013) in the KMI Perth Amboy NJ Terminal's RFG batch

report, annual sulfur report, and annual benzene report.

### SEVENTH CLAIM FOR RELIEF

(Memphis Refinery CG Sampling and Testing Violations)

78.  Paragraphs 1 through 77 are re-alleged and incorporated by reference.

79.  On October 26, 2015, the EPA observed that while collecting, handling, and

preparing representative batch certification samples of CG to be analyzed for RVP, the sample

technician at the Memphis Refinery did not rinse the sample containers with the product before

drawing the samples as required by ASTM D5842-14, Section 6.4.4, and that the sample

transfers involved in the collection procedure did not utilize an apparatus to bottom-fill the

sample containers as required for tap sampling by ASTM D5842-14, Section 7.2.2.1(b).

Additionally, the EPA observed that the sample technician did not chill the samples prior to

opening the sample containers as required by ASTM D5842-14, Section 6.5.1 and ASTM

D5191-13, Section 8.2 or while aerating the samples prior to testing as required by ASTM

D5191-13, Section 8.4.2.

80.  Valero violated 40 C.F.R. §§ 80.101(i)(1)(i)(A), 80.8(c) and 80.46(c)(1) at its

Memphis Refinery by failing to collect, handle, and prepare representative batch certification

samples of CG to be analyzed for RVP in accordance with ASTM D5842-14 and ASTM D519-

13.

## EIGHTH CLAIM FOR RELIEF

(Memphis Refinery CG Testing Violation)

81.  Paragraphs 1 through 80 are re-alleged and incorporated by reference.

82.  On October 26, 2015, the EPA observed that while preparing a representative batch certification sample of CG to be analyzed for benzene, the lab technician at the Memphis Refinery poured the sample liquid into the 25 mL volumetric flask to just below the 25 mL line. The EPA observed that the lab technician then used an autopipette to measure 1 mL of 2-butanol into the flask, which increased the volume in the flask to above the 25 mL line. ASTM D3606-10, Section 12.1 specifies introduction of the internal standard (*i.e.*, 2-butanol) into the flask before adding the sample liquid in order to ensure that an accurate volume is mixed together.

83. Valero violated 40 C.F.R. §§ 80.101(i)(1)(i)(A) and 80.46(e) at the Memphis Refinery by failing to prepare a representative sample of CG to be analyzed for benzene in accordance with ASTM D3606-10.

## NINTH CLAIM FOR RELIEF

(Memphis Refinery Diesel Fuel Testing Violation)

84.  Paragraphs 1 through 83 are re-alleged and incorporated by reference.

85.  The Memphis Refinery had been approved by EPA to use ASTM D7039 under 40 C.F.R. § 80.585 for determining the sulfur content of ULSD.

86.  Valero violated 40 C.F.R. § 80.586 at the Memphis Refinery by failing to maintain documentation demonstrating that an investigation, as required by 40 C.F.R. § 80.585(e)(4), had occurred into the cause of each quality control testing violation or deviation for individual

observation charts when testing a quality control sample for batch certification of ULSD per ASTM D7039, the test method approved under 40 C.F.R. § 80.585.

## TENTH CLAIM FOR RELIEF

(Houston Refinery CG Sampling Violation)

87.  Paragraphs 1 through 86 are re-alleged and incorporated by reference.

88.  On November 2, 2015, the EPA observed that while collecting representative batch samples of CG for batch certification through manual sampling, the sample technician at the Houston Refinery did not properly rinse the sample containers with the product before drawing the samples as required by ASTM D4057-12, Section 10.8.

89.  Valero violated 40 C.F.R. §§ 80.101(i)(1)(i)(A) and 80.8(a) at the Houston Refinery (Facility ID 00962) by failing to collect representative batch samples of CG for batch certification through manual sampling in accordance with ASTM D4057-12.

## ELEVENTH CLAIM FOR RELIEF

(Houston Refinery Diesel Fuel Sampling Violation)

90.  Paragraphs 1 through 89 are re-alleged and incorporated by reference.

91.  On November 2, 2015, the EPA observed that while collecting representative batch samples of ULSD from Tank TK228 for batch certification, the sampling technician at the Houston Refinery did not collect spot samples for homogeneity determination beginning at the top and working downwards as required by ASTM D4057-12, Section 9.6.2(5). Additionally, the EPA observed that for the all-levels samples collected, the sampling technician did not rinse the sample bottles prior to collecting the samples as required by ASTM D4057-12, Section 10.8. The

EPA also observed that the sampling technician overfilled the bottles and ultimately poured off the overfill liquid to get the level on the bottle to between 70-85% instead of discarding the sample and repeating the procedure as required by ASTM D4057, Section 9.5.4(6). Lastly, the EPA observed that the sampling technician did not label or tag the sample bottles after immediately obtaining the samples as required by ASTM D4057-12, Section 9.4.1.

92.   Valero violated 40 C.F.R. §§ 80.581(a), 80.580(a), 80.330(b)(1), and 80.8(a) at the Houston Refinery by failing to collect representative batch samples of ULSD for batch certification in accordance with ASTM D4057-12.

### TWELTH CLAIM FOR RELIEF

(Texas City Refinery CG Sampling Violations)

93.  Paragraphs 1 through 92 are re-alleged and incorporated by reference.

94.  On November 4, 2015, the EPA observed that while collecting representative batch samples of CG from Tank TK478 for batch certification, the sample technician at the Texas City Refinery did not properly flush the lines of the tap sampling apparatus to get representative samples and failed to include the lower portion of the tank contents when sampling for homogeneity and when composite sampling for the batch certification samples. Additionally, the EPA observed that when conducting top sampling, the sample technician did not properly rinse the sample containers with the product before drawing the samples as required by ASTM D4057-12, Section 10.8. The EPA also observed that when conducting top sampling, the sample technician removed the caps from the sample containers and set the containers aside while collecting other samples from the tank, allowing product spray from the sample rope connected

to the bottle cage and by other windborne contaminants to enter the containers. As a result, the sample containers were not clean and free from all substances that might contaminate the samples as required by ASTM D4057-12, Section 6.6.

95.  Valero violated 40 C.F.R. §§ 80.101(i)(1)(i)(A) and 80.8(a) at the Texas City Refinery by failing to collect representative batch sample of CG for batch certification through manual sampling in accordance with ASTM D4057-12.

## THIRTEENTH CLAIM FOR RELIEF

(Texas City Refinery CG Testing Violation)

96.  Paragraphs 1 through 95 are re-alleged and incorporated by reference.

97.  On November 4, 2015, the EPA observed that while analyzing CG batch certification samples for sulfur content, the Texas City Refinery reported the sulfur content based on a single analysis result, while ASTM D5453-12, Section 11.4 requires measuring the test specimen solution three times and calculating the average detector responses.

98.  Valero violated 40 C.F.R. §§ 80.101(i)(1)(i)(A) and 80.46(a)(1) at the Texas City Refinery by failing to analyze the CG batch certification sample for sulfur content in accordance with ASTM D5453-12.

## FOURTEENTH CLAIM FOR RELIEF

(Texas City Refinery Diesel Fuel Testing Violation)

99.  Paragraphs 1 through 98 are re-alleged and incorporated by reference.

100.  The Texas City Refinery had been approved by EPA to use ASTM D5453 under 40 C.F.R. § 80.585 for determining the sulfur content of ULSD.

101.  On November 4, 2015, the EPA observed that while analyzing a ULSD batch certification sample for sulfur content, the Texas City Refinery reported the sulfur content based on a single analysis result, while ASTM D5453-12, Section 11.4 requires measuring the test specimen solution three times and calculating the average detector responses.

102.  Valero violated 40 C.F.R. §§ 80.581(a)-(b) and 80.580(b)(3) at the Texas City Refinery by failing to analyze the ULSD certification sample for sulfur content in accordance with ASTM D5453, the test method approved under 40 C.F.R. § 80.585.

## FIFTEENTH CLAIM FOR RELIEF

### (KMI Houston Terminal Per-Gallon VOC Standard Violation)

103.  Paragraphs 1 through 102 are re-alleged and incorporated by reference.

104.  In 2018, the KMI Houston Terminal complied on an average basis for VOC reduction, which requires that each batch meet a per-gallon minimum VOC emissions performance reduction of 25.0 percent for RFG designated for VOC-Control Region 1.

105.  On or about August 1, 2018, Valero produced a batch of RFG at the KMI Houston Terminal with a volume of 1,166,66 gallons and a VOC emissions performance reduction of 24.26 percent. Valero designated this batch for VOC-Control Region 1.

106.  Valero violated 40 C.F.R. § 80.78(a)(1) at the KMI Houston Terminal in 2018 by producing RFG during the period of May 1 through September 15 that did not meet the applicable per-gallon minimum VOC emissions performance reduction standard of 25.0 percent for RFG designated for VOC-Control Region 1.

## SIXTEENTH CLAIM FOR RELIEF

(Corpus Christi East Refinery RVP Standard Violations)

107.  Paragraphs 1 through 106 are re-alleged and incorporated by reference.

108.  On or around September 1, 5, and 8, 2017, Valero distributed three truck shipments of gasoline approximately 11,111 gallons, 66,667, and 46,667 gallons, respectively, of gasoline with RVPs that exceeded 9.0 psi from the Corpus Christi East Refinery.

109.  Valero violated 40 C.F.R. § 80.27(a)(2) at the Corpus Christi East Refinery by distributing gasoline with RVPs that exceeded 9.0 psi during the regulatory control period.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court enter judgement against Valero:

A.   Imposing a civil penalty on Valero for each violation enumerated in the United States' First through  Sixteenth Claims for Relief in an amount up to $37,500 per day for each day of violation occuring between January 12, 2009 and November 2, 2015, up to $48,192 per day for each violation occurring after November 2, 2015, plus the amount of any economic benefit or savings resulting from the violation,  pursuant to Section 211(d)(1) of the Act, 42 U.S.C. § 7545(d)(1), and 40 C.F.R. § 19.4 (as adjusted over time as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996, and most recently, by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015

(28 U.S.C. § 2461 note; Pub. L.114-74, Section 701));

B.     Directing injunctive relief to remedy the systemic causes giving rise to the

violations enumerated in the United States' First through Sixteenth Claims for

Relief;

C.     Enjoining Defendants from committing any further violations of the Act and

regulations promulgated thereunder, pursuant to Section 211(d)(2) of the Act, 42

U.S.C. § 7545(d)(2);

D.     Awarding the United States its costs of this action; and

E.     Granting the United States such other relief as the Court deems just and proper.


Dated, October 19, 2020.

                              Respectfully submitted,

                              BRUCE GELBER
                              Deputy Assistant Attorney General
                              Environment and Natural Resources Division
                              U.S. Department of Justice


                              JOHN MOSCATO
                              Colorado Bar # 30394
                              Senior Counsel
                              Environment and Natural Resources Division
                              Environmental Enforcement Section
                              United States Department of Justice
                              999 18th Street, South Terrace - Suite 370
                              Denver, CO 80202
                              Email:  john.moscato@usdoj.gov
                              Telephone: (303) 844-1380
                              Facsimile:   (303) 844-1350

Complaint                          23              U.S. v. Valero Energy Corp.
                                                    Civil Action No. 20cv1237

OF COUNSEL:
MELISSA SCHEFSKI
JEFF KODISH
Attorney Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202
Telephone: (303) 312-6842
schefski.melissa@epa.gov

## CERTIFICATE OF SERVICE

     I hereby certify that on October 19, 2020, on behalf of the United States of America, in this case, I electronically sent the foregoing Complaint with the Clerk of the Court by using the CM/ECF system. I certify the foregoing was served via electronic mail to the following:

Counsel For Valero:
Elizabeth Bourbon
Senior Managing Counsel
Valero Energy Corporation
P.O. Box 696000
One Valero Way
San Antonio, TX 78249
Elizabeth.bourbon@valero.com
(210) 345-4650

Matthew W. Morrison
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C. 20036
matthew.morrison@pillsburylaw.com
(202) 663-8036

                                      John N. Moscato
                                      Senior Counsel
                                      Environment and Natural Resources Division
                                      Environmental Enforcement Section
                                      United States Department of Justice
                                      999 18th Street, South Terrace - Suite 370
                                      Denver, CO 80202
                                      Email:  john.moscato@usdoj.gov
                                      Telephone: (303) 844-1380
                                      Facsimile:   (303) 844-1350